IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

Joel Daniel Wickwire                    *
The State of Washington                 *
United States of America                *

*(Full name and address of the plaintiff)*

**Plaintiff(s)**

vs.

Civil No.: 3-21cv39
*(Leave blank. To be filled in by Court.)*

American Public University System/      *
American Military University            *
Dr. Katherine Brannum                   *
Dr. Lori Woeste                         *
Dr. John Dolan                          *
Dr. Melissa Schnyder                    *
Dr. Vernon Smith                        *
Dr. Nicole Drumhiller                   *
Dr. Mark Riccardi                       *
Dr. Jennifer Douglas                    *
Dr. Melissa Layne                       *
Dr. Carlson-Rainer                      *
Ms. Caroline Simpson                    *
Ms. Michelle Newman                     *
ORGANIZATION'S ADDRESS                  *
111 W Congress St.                      *
Charles Town, WV, 25414                 *
United States of America                *

*(Full name and address of the defendant(s))*

**Defendant(s)**

\*\*\*\*\*\*\*

1

# COMPLAINT

1. Jurisdiction in this case is based on:

☒       Diversity (none of the defendants are residents of the state where plaintiff is a resident)

☒       Federal question (s) (suit is based upon a federal statute or provision of the United States Constitution)

The original Enrollment Agreement included an Arbitration Clause. However, this Enrollment Agreement was formed under the Obama era Consumer Financial Protection Bureau ban on mandatory Arbitration Clauses in universities receiving federal funding. Does this invalidate the arbitration clause in this case?

Upon (wrongful) Expulsion the university severed its contract with the Plaintiff. Does this invalidate that contract?

Upon Re-Admission following Appeal the Plaintiff formed a new Scholarship Agreement/Enrollment Agreement with new program protocols with no Arbitration Clause. How are subsequent breaches of that Agreement treated?

☐       Other (explain)

---

Complaint (Rev. 12/2000)

2. The facts of this case are:

Joel Daniel Wickwire (hereafter Plaintiff) was a student in Doctorate in Global Security Program (hereafter DGS Program) at American Public University System/American Military University (hereafter APUS/AMU). This is a new program at APUS/AMU, only about 3 years old. The Plaintiff was the only non-military and non-law enforcement member of that Program. Throughout the DGS Program actions were taken against the Plaintiff that violated the Student Handbook, University Protocol, and other generally accepted Student Rights.

On 8/32/2018 at Residency 1 Dr. Dolan in front of the Former President & Senior Director for Counterterrorism at the National Security Council Chris Costa and the DGS Program Faculty and Cohort who are all respected military officers told a story about how "it only takes one crew member to sink a ship" twice while staring directly at the Plaintiff. This is a clear example of public slander and professional disparagement that can be made on the first day of a doctoral program in the field of global security. This complete disregard for the Plaintiff's reputation and professional development is evident in all the events that follow.

On or about 5/23/2019 the Plaintiff met with Dr. Dolan for an advising session. During this session the Plaintiff asked if the Residency 2 – the International Experience portion of the DGS Program that was planned to take place in Brussels was "set in stone" (Brussels is where the Cohort was informed Residency 1would be. This was advertised as part of the program upon entry in the program. Other students can confirm this). The day after this meeting the Cohort was informed it was cancelled. The Plaintiff had planned his program and international research around this program milestone and this breach of contract equates to a substantive change in program and warrants a full refund of the tuition and fees.

On 4/8/2020 the Plaintiff was informed through email that he would no longer be able to publish his "Special Edition" of the university's academic Journal, Global Security and Intelligence Studies (Hereafter GSIS). This was done with no legitimate cause and resulted in defaming the Plaintiff. The Plaintiff had been appointed Associate Editor of GSIS and begun speaking with cohort members, faculty, and international research on the topic of Policymaking and Intelligence. He had even taken a course on the topic in the program in preparation and to get up-to-speed. He had even begun accepting submissions. The cancellation of this publication damaged his reputation not only with his cohort and faculty but with member of security field around the world with whom he was in communication. Througout the program there was discussion of starting a small think tank following graduation. This Special Issue was to be a "preliminary project." The cancellation caused great distress and damaged relationships for the Plaintiff moving forward.

On 9/19/2019, after notifying his cohort that the Special Issue was cancelled, the Plaintiff was required to attend a "Student Success Meeting" where Dr. Brannum, Dr. Dolan, Dr. Drumhiller, and Dr. Woeste reprimanded the Plaintiff for posting the cancellation notification which was apparently perceived as being negative. No one in that group was aware of reasons for the cancelation of the Special Issue. They all seemed solely malicious in intent. Other topics he was reprimanded for were notifying Dr. Brannum of her misrepresentation of the Student Handbook (specifically related to Practicum approval process), encouraging a fellow student to submit posts

on time so that they could be included in the discussion, and for mentioning in a webinar presentation that he was giving on international psychology research that he had received a grant from APUS/AMU. Due to this strange interaction with the faculty, the Plaintiff suffered further emotion distress. This was reflected in the recording of an ongoing "Emotional Intelligence" survey being completed by the cohort during this and in the submission of Presentation on Leadership that was submitted uncharacteristically below the quality of work normally submitted by the Plaintiff.

In emails between 8/18/2019-8/28/2019 Dr. Brannum both denied that instructors had a 5 day timeline to return grades (in Handbook) and that there was not a 7-day timeline to return forms signed to students regarding students' Annual Review (stated on form). When presented with these contractual facts after they had been violated, they were changed to the detriment of students. Both cases are clear violations contracts and university protocol of APUS/AMU and the DGS Program. All these violations equate to gross professional negligence causing significant damages worthy of redress.

On 2/26/2020, related to the Plaintiff's Practicum approval process, the discrepancies between Dr. Brannum's claims and the Handbook were acknowledged by Dr. Drumhiller who told the Plaintiff these would also be changed. The student had offered three Practicum options that required applying for and discussing project plans with government officials and NGOs in order to submit the proposal. Each of these options were well within the outlined guidelines and purpose for the Practicum in the Student Handbook, as Dr. Drumhiller attested to. However, upon submitting each option, they were denied. A video recording was made for the Cohort to explain the Practicum because everyone seemed lost. Dr. Brannum listed the three options submitted by the Plaintiff dismissing them completely and disrespectfully without regard when they were aligned with the guidelines. This video that clearly contradicted the Student Handbook and was shown to the Cohort before these changes were made to the Handbook.

On or about 1/9/2020 the Plaintiff was in the course "Conflict Resolution." There were three significant events in this course that violated student's rights and advertised university practices. 1) Dr. Carlson-Rainer would not communicate using the messaging system so all communication had to be done in the course discussion section (e.g. questions/additional comments). The Plaintiff was apparently the only student who tried to communicate with the professor that term because no one else posted in that section and Dr. Carlson-Rainer never answered any of the Plaintiff's questions. In fact, that same term a professor posted a video in Programs "Yammer" account for discussion explaining how professors of the program use the messaging system to promote communication. 2) I shared this link in the course space and it was deleted. There was no reason for this and it borders on a basic first amendment violation. I reach out to the school leadership regarding the unprofessional being exhibited in this class. In addition to the inability to communicate with the professor links did not work. 3) It is important for the course space to remain the same during a term so that references and material are not changed without notifiying the students. In this course, the course was changed, and when noting all these issues to the leadership (Dr. Riccardi and Dr. Douglas), they simply dismissed my claims suggesting I was lying. For a doctoral student to be told they are lying by the leaderships a university shows a complete lack of respect of the effort, time and money the Plaintiff was investing in that program. This is not to mention the libelous/slanderous nature of this false claim.

On 8/24/2020 the Plaintiff attended his Portfolio Review. In attendance were Dr. Brannum, Dr. Dolan, Dr. Woeste, and Dr. Schnyder. To begin, the Zoom meeting immediately crashed. In all the Zoom meetings, discussions and presentations the Plaintiff has ever attended, this is only time this has ever happened and is representative of the unreal experience that followed. During this Review the Plaintiff showed clear mastery of the material. The conversation then turned to past issues rather than focusing on the Portfolio. Dr. Dolan at one point in an effort to belittle and deface the Plaintiff began yelling at the Plaintiff during a Professional Practice Portfolio Review about events mentioned above where members of the panel had been corrected by the Plaintiff because they were wrong. The complete absurdity, incoherence, and offensive nature of this experience is beyond further description. It was completely unprofessional. All four of these faculty members should be removed to save any future students from a similar experience.

On 8/26/2020 there was an exchange of emails that led to the Plaintiff being placed on "Administrative Leave" - "Suspension for Review of Conduct" or "Administrative Leave." After the Plaintiff Failed the Portfolio Review because the staff was disgruntled over their own program shortcomings there was an exchange of emails regarding filling a position on the Plaintiff's Dissertation Committee. One of the prosed candidates was Dr. Wilkin, the Program Director of the Legal Studies Department at APUS/AMU. The Plaintiff has a Masters of Arts in Legal Studies with APUS/AMU and Dr. Wilkin had previously been his Program Director and Professor for a course in Criminal Justice. The Plaintiff had previously noted when emailing Dr. Brannum that one of her two contacts when she was out of the office, which was often, was Dr. Wilkin. However, upon offering Dr. Wilkin as Committee Member, Dr. Brannum denied knowing her. Shocked again by the complete lack of professionalism on the part of the DGS Program faculty the student questioned how his relationships could come into question when Dr. Brannum did even know her personal/professional contacts. At that time the Plaintiff was placed on Suspension for Review of Conduct" one day before Residency 2. After emailing with Dr. Wilkin, the Plaintiff learned indeed Dr. Wilkin and Dr. Brannum often emailed, talk on the phone, and sit on committees together.

On 8/26/2020 the Plaintiff was placed on "Suspension for Review of Conduct" without cause, any reason, without any opportunity to appeal to a judge or committee, while abroad in Ukraine conducting dissertation related research, during the first months of the COVID pandemic, and one day before Residency 2.

On 10/6/2020 the Plaintiff was Expelled. The evidence provided are video meetings that were not recorded, the above interactions that were essentially all Student Handbook violations by the faculty, and other listed items that are misleading, out of context and/or lies. Issues discussed during the Success Meeting are not listed in the Expulsion because they were not true then and were certainly not true now. The is Expulsion took place without a trial, without a neutral judge, and when the Plaintiff requested documentation/evidence to support the claims, he was refused. This Committee made this decision to Expel doctoral student without viewing evidence for the claims made. They all deserve to be reprimanded and that is why this lawsuit includes them all.

On 10/22/2020 the Plaintiff submitted his Appeal noting that due to his forced exit from the Program and the irrational behavior and capricious decision-making on the part of the DGS Faculty, he did not see an easy path forward and would probably be seeking legal action for a

5

refund of his dept to APUS/AMU, related fees, and requesting a 3-hiatus to focus other obligations that had arisen since his forced exit. During the time following the submission of the Appeal, there was communication on the requirement of a "neutral third party" to review the Appeal. The Plaintiff was concerned about the biased nature of the panel. Upon seeing the request Jenny McGuigan, the Director of Student Conduct and Grievances and the individual with whom the Plaintiff had been in contact with at the APUS/AMU Conduct Office, asked "where did you hear that?" The Plaintiff instructed her that the Student Appeals Office had told him.

On 11/16/2020 Jenny emailed the Plaintiff that the President of the University was reviewing his Appeal. The Plaintiff informed Jenny that if the President had been aware of these ongoing problems, he may not be a "neutral party." Jenny "noted the concern."

On 11/30/2020 the Plaintiff received a "Scholarship Agreement" from Jenny. The Scholarship Agreement was signed by Provost Smith. Apparently the President was not a neutral party. After that email Jenny was no longer the Director of the Conduct Office.

At this point, considering all evidence presented thus far in this Complaint, and specific nature of the Plaintiff's Appeal, which denied any wrong doing on his part and must have been taken into consideration for the Appeal to be approved because otherwise the Scholarship Agreement would not have been offered, it was understood by the Plaintiff that it the Scholarship would cover the costs of the remainder of the program, in addition to the costs of the "Emotional Intelligence and Assessment" course (Hereafter EQ Course). It was also repeatedly expressed in the Appeal and emails that that the Plaintiff would not be able to re-start the program for 3 years. Prior to signing the Scholarship Agreement the Plaintiff raised questions related to these concerns. The communication was now with Ms. Simpson in the Conduct office. There was no response.

Voicing these concerns the Plaintiff sign the Scholarship Agreement which did not forbid the extended timeline, thus it must have been taken into consideration. The only two references to time are/were that the Scholarship Agreement be returned by Dec. 15th and that the EQ course is to be "completed within 6 months of re-enrollment." After submitting the Scholarship Agreement, the Plaintiff asked for notification of being returned to "Good Standing and…readmission." This was never given. The Plaintiff has not received notification of being re-enrolled. Instead Ms. Simpson demanded that the EQ course be completed prior to re-enrollment, contrary to the Scholarship Agreement.

The Plaintiff also continued to ask for the finances of the Scholarship Agreement. In the Scholarship Agreement it states that:

> This letter agreement serves to offer you the opportunity to re-enroll and pursue completion of your Doctor of Global Studies program at American Military University (AMU). This scholarship will cover tuition and any fees associated with completion of the graduate level course, Emotional Intelligence and Assessment. Any other expenses or costs incurred that are not explicitly outlined in this letter are your responsibility, including, for example, any lab equipment, software for

6

certain courses, tuition and fees associated with other courses, and your graduation fee. To accept and maintain this scholarship: ...8. The scholarship applies only to the completion of your Doctor of Global Studies program. Any program changes may result in loss of this scholarship.

The request for the finances stem from the mention of "costs incurred that are not explicitly outlined in this letter." Because the EQ Course is not a requirement of the program, the term "other courses" was taken to mean "other courses" such as extra electives or additional "dissertation research/writing courses" not the required coursework that was include within the Scholarship through Provision 8, the only Provision that could be considered to address the financial aspect of the scholarship.

The only reasonable person to address these concerns is the person who "Reviewed" the Appeal and "Signed" the Scholarship Agreement, Provost Smith. However, the person Ms. Simpson would allow the Plaintiff to speak with was Dr. Woeste. Throughout the Plaintiff's experience at APUS/AMU, Dr. Woeste has been unable to address several questions the Plaintiff was sent to her to inquire about and has otherwise only expressed negative and malicious asserts toward the Plaintiff.

1) The first time was on 8/22 after Residency 2 was Cancelled. Dr. Brannum asked that the Plaintiff to ask Dr. Woeste about how funding for Residency 2 would work. Dr. Woeste thought that students would pay out-of-pocket and be reimbursed, but this was incorrect. Upon realizing this she simply ceased communicating with the Plaintiff rather than working through the problem.
2) The second instance was during the "Student Success" meeting on 9/19/19 when she instructed the Plaintiff not to tell anyone that he received a Scholarship for submitting a research plan to APUS/AMU.
3) A third instance was on and around 11/19/19 after the Plaintiff's new Residency 2 had been Approved. Six weeks after submitting a Residency 2 plan, Financial Aid told the Plaintiff that Dr. Brannum or the "Finance Director" were approving the financial aspect. Upon inquiry, Dr. Brannum did not have it the "Finance Director" was Dr. Woeste and she knew didn't know anything about it either, six weeks after the Plaintiff had submitted it. This caused further procedural complications with Financial Aid. Everyone was telling a different story.
4) A fourth instance was on 6/26/20 when Dr. Watts instructed me to contact Dr. Woeste about the Practicum Deadline. Instead of assisting, as Dr. Woeste probably told Dr. Watts she could, she sent me a back to Dr. Watts again without any insight.
5) The fifth instance of negative interaction with Dr. Woeste where she simply was not able to provide and student support was during the Portfolio Review on 8/24/20. She went on about professionalism in no way related to my presentation. It is clear now she was setting the stage for failing the Plaintiff for superficial reasons.
6) The sixth instance was her role on the Expulsion Committee where they Expelled a student with insufficient cause and lack of respect for procedure.
7) The seventh is her clear rejection of allowing the Plaintiff to meet with anyone except for herself to discuss re-entry and the Scholarship Agreement.

After signing the Scholarship Agreement, the Plaintiff was meant to be in good standing, but emails to Dr. Smith to discuss the Scholarship Agreement, emails to Dr. Brannum, Dr. Douglas, and Dr. Riccardi about a hiatus have gone unanswered. Apparently the only person the Plaintiff is allowed to communicate with is Dr. Woeste. It was clear at this point all efforts at moving through this conflict had been exhausted.

There have also been efforts to contact JAMs Arbitration but there have been responses. This is the Arbitration organization that was listed in the original Enrollment Agreement. However, they are not listed in the Graduate Catalogue or Student Handbook as a means of dispute resolution. Both of the references have been updated since beginning the program, it is not clear it this equates to an update to the Enrollment Agreement.

**On 3/4/2020 the Plaintiff felt it was time to file this lawsuit.**

These discriminatory actions were taken by individuals (perhaps in collusion) causing extreme emotional distress, damaging the Plaintiff's personal and professional relationships, and damaging future career earning potential. The true damage caused by the Allegations against the Plaintiff that were presented here are extremely damaging considering this was a Doctorate Degree in a very specific field of profession. Relationships damaged include individuals in the program (students and professors), other private individuals, international and domestic government employees and branches, international and domestic non-profit organizations, international and domestic agencies, and international and domestic businesses. All these relationships were in-part dependent on evolving relative to the completion of the DGS Program.

These violations are illustrated in the 5 Allegations supported by case law outlined below in chronological order:

## LIST OF ALLEGATIONS

1. RESIDENCY CANCELATION (on or about 5/23/2019)

2. GLOBAL SECURITY AND INTELLIGENCE STUDIES (ACADEMIC JOURNAL) VIOLATIONS (4/8/2020)

3. PROFESSOR (ADMINISTRATION) CONDUCT (Brannum – 2/26/20 and Drumhiller acknowledging the discrepancies from Handbook – 3/10/2020; Carlson-Rainer – on or about 1/9/2020; Brannum, Riccardi, Douglas)

4. PORTFOLIO REVIEW (AND SUCCESS MEETING - 9/19/2019) CONDUCT (8/24/20)

5. EXPULSION (AND APPEALS) PROCESS VIOLATIONS (9/30/2020-Present)

## 1. RESIDENCY CANCELATION
SUMMONS - APUS/AMU, Dr. Brannum, Dr. Drumhiller, Dr. Dolan, Woeste

**Applicable Rights, Case Law and Violation(s) –**

**Student Right** - Right to fulfillment of promises and verbal promises by advisors - Dolan said it was set in stone, next day it was cancelled.
**Case Law** – *Rafferty, D. P.* (1993). Technical foul! Ross v. creighton university allows courts to penalize universities which do not perform specific promises made to student-athletes. South Dakota Law Review (38) 173. Retrieved from LEXIS-NEXIShost. http://www.lexisnexis.com/hottopics/lnacademic/; *Ross v. Creighton University*, 1992; *Long v. University of North Carolina at Wilmington*, 1995; *North Carolina at Wilmington* (1995) found, however, that verbal agreements must be made in an official capacity in order to be binding (Bowden, 2007). *Dezick v. Umpqua Community College* (1979) found a student was compensated because classes offered orally by the dean were not provided. *Healy v. Larsson* (1974) found that a student who completed degree requirements prescribed by an academic advisor was entitled to a degree on the basis that this was an implied contract. An advisor should, thus, be considered an official source of information.
**Other Source(s)** - Bowden, R. (2007). Evolution of responsibility: From "in loco parentis" to "ad meliora vertamur". Education, 127(4), 480-489. Retrieved from EBSCOhost. Bradshaw v. Rawlings, 612 F. 2d 135 (3rd Cir. 1979)
**Violation(s)** – Cancel of Promised Residency. Planned European research around it. **Website did not reflect this until I mentioned it months later misleading potentially many applicants. Residency Course in Brussels was still offered in Canvas. Complete lack of professionalism with regard to a critical aspect of the program.**

## 2. GSIS VIOLATIONS
SUMMONS Dr. Layne; WITNESS Dr. Matherly

**Applicable Rights, Case Law and Violation(s) –**

**Student Right** - Right to protection from arbitrary or capricious decision making in advising.
**Case Law** – *Anderson v. Mass. Inst. of Tech.*, 1995; *Sharick v. Southeastern University of the Health Sciences*, 2000; *Kaplan and Lee* (2011) The Law of Higher Education and Kaplan; *Brody v. Finch University of Health Sciences / Chicago Med. School*, 1988
Private Schools - *Healy v. Larsson* (1974).
**Other Source(s)** – n/a
**Violation(s)** – Cancelled my Special Issue after recruiting authors that included cohort members and professors and international experts, their writing had begun, and submissions were made and editing had begun.

**Student Right** - Right to fulfillment of verbal promises in Advising – To develop and edit my "Special Issue"

9

**Case Law** – *Rafferty, D. P.* (1993). Technical foul! Ross v. creighton university allows courts to penalize universities which do not perform specific promises made to student-athletes. South Dakota Law Review (38) 173. Retrieved from LEXIS-NEXIShost. http://www.lexisnexis.com/hottopics/lnacademic/; *Ross v. Creighton University*, 1992; *Long v. University of North Carolina at Wilmington*, 1995; *North Carolina at Wilmington* (1995) found, however, that verbal agreements must be made in an official capacity in order to be binding (Bowden, 2007). *Dezick v. Umpqua Community College* (1979) found a student was compensated because classes offered orally by the dean were not provided. *Healy v. Larsson* (1974) found that a student who completed degree requirements prescribed by an academic advisor was entitled to a degree on the basis that this was an implied contract. An advisor should, thus, be considered an official source of information.
**Other Source(s)** - Bowden, R. (2007). Evolution of responsibility: From "in loco parentis" to "ad meliora vertamur". Education, 127(4), 480-489. Retrieved from EBSCOhost. Bradshaw v. Rawlings, 612 F. 2d 135 (3rd Cir. 1979)
**Violation(s)** - Cancelled my Special Issue after recruiting authors that included cohort members and professors and international experts, their writing had begun, submissions were made, and editing had begun.

### 3. PROFESSOR (ADMINISTRATION) CONDUCT
SUMMONS Dr. Brannum, Dr. Carlson-Rainer; WITNESS Dr. Roman

**Applicable Rights, Case Law and Violation(s) –**

**Student Right** - Right to adherence to handbooks
**Case Law** – Kaplan and Lee (2011) The Law of Higher Education; Fellheimer v. Middleburry College, 1994.
**Other Source(s)** – n/a
**Violation(s)** – Dr. Brannum denies three proposals for Practicum aligned with Student Handbook descriptions and even holds video where she dismisses these with prejudice. Dr. Brannum changes requirement in Handbook on professors grading timeline. Dr. Brannum does not return signed Annual Review form within timeline stated on for and says changes it. Upon "re-entry" Dr. Brannum ignores communication sent to her.

**Student Right** - Right to the advertised level of course instruction
**Case Law** – *Mawdsley, R. D.* (2004). Student rights, safety, and codes of conduct. New Directions for Community Colleges, (125), 5-15. Retrieved from EBSCOhost.; *Andre v. Pace University*, 1996 awarded damages on the grounds of negligent misrepresentation and breach of contract.
**Other Source(s)** - Bach, J. J. (2003). Students have rights too: The drafting of student conduct codes. Brigham Young University Education & Law Journal, (1), 1. Retrieved from EBSCOhost.
**Violation(s)** – Dr. Carlson-Rainer – won't communicate along university guidelines (Watts video post deleted). Also, Dr. Carlson-Rainer changed the course space during the term an issue that came up with **Brannum, Riccardi, Dougls, and Woestre,**

4. PORTFOLIO REVIEW (AND SUCCESS MEETING CONDUCT) CONDUCT
SUMMONS Dr. Brannum, Dr. Dolan, Dr. Woeste, Dr. Drumhiller, and Dr. Schnyder

**Applicable Rights, Case Law and Violation(s) –**

**Student Right** - Right to record disciplinary hearings
**Case Law** – ASHE & Henderickson, 1986; Esteban v. Central Missouri State College, 1969; *Board of Curators of the University of Missouri v. Horowitz*, 1978
**Other Source(s)** – n/a
**Violation(s)** – This ended up being a discipline hearings.

5. EXPULSION (AND APPEALS) PROCESS VIOLATIONS
SUMMONS Dr. Brannum, Dr. Woeste, Dr. Smith, Ms. Simpson; WITNESS Ms. McGuigan

**Applicable Rights, Case Law and Violation(s) –**

**Student Right** - Right to protection from arbitrary or capricious decision making in disciplinary actions.
**Case Law** – *Anderson v. Mass. Inst. of Tech.*, 1995; *Sharick v. Southeastern University of the Health Sciences*, 2000; *Kaplan and Lee* (2011) The Law of Higher Education and Kaplan; *Brody v. Finch University of Health Sciences / Chicago Med. School*, 1988 Private Schools - *Healy v. Larsson* (1974).
**Other Source(s)** – Generally - Bowden, R. (2007). Evolution of responsibility: From "in loco parentis" to "ad meliora vertamur". Education, 127(4), 480-489. Retrieved from EBSCOhost. Bradshaw v. Rawlings, 612 F. 2d 135 (3rd Cir. 1979) ; Bach, J. J. (2003). Students have rights too: The drafting of student conduct codes. Brigham Young University Education & Law Journal, (1), 1. Retrieved from EBSCOhost.
**Violation(s)** – (1) In Initial Disciplinary Hearing Dr. Brannum did not know the reason for being there. (2) Portfolio Review Critique not applicable to presentation (3) Dolan yelling at Portfolio. (4) Review of Conduct Suspensions and forced withdraw day before Residency 2. (5) Expulsion and process (e.g. inaccurate information in expulsion letter, no evidence was provided when asked, no hearing so there also no recording of the hearing, no expert judge) (6) Uncertainty over stipulation of Agreement (e.g. there was no timeline, no class description, no financial data provided).

**Student Right** - Right to due process in disciplinary with the potential to lead to a monetary loss
**Case Law** - Mangala v. Brown University, 1998; Kaplan and Lee (2011) The Law of Higher Education and Kaplan
**Other Source(s)** – n/a
**Violation(s)** – No Due Process.

**Student Right** - Right to a hearing before an expert judge
**Case Law** - ASHE & Henderickson, 1986; Esteban v. Central Missouri State College, 1969; *Board of Curators of the University of Missouri v. Horowitz*, 1978
**Other Source(s)** – n/a

11

**Violation(s)** – Did not take place.

**Student Right** - Right to inspect all documents in disciplinary hearings
**Case Law** – ASHE & Henderickson, 1986; Esteban v. Central Missouri State College, 1969; *Board of Curators of the University of Missouri v. Horowitz*, 1978
**Other Source(s)** – n/a
**Violation(s)** – I asked for documentation and they were not given.

**Student Right** - Right to record disciplinary hearings
**Case Law** – ASHE & Henderickson, 1986; Esteban v. Central Missouri State College, 1969; *Board of Curators of the University of Missouri v. Horowitz*, 1978
**Other Source(s)** – n/a
**Violation(s)** – No hearing, no recording.

---

3. The relief I want the court to order is: Damages in the amount of:

An injunction ordering: Other (explain)

RELIEF SOUGHT AT TRIAL

1. ALL REFERENCE TO EXPULSION DELETED FROM ACADEMIC RECORD

2. ALL LOANS CONNECTED TO APUS/AMU REFUNDED

3. DOCTORAL PROGRAM POLICY ADJUSTMENT: RETURN OF PROFESSOR WEEK REQUIREMENT FOR GRADING, PROFESSORS REQUIRED TO COMMUNICATE THROUGH MESSAGING SYSTEM, STANDARD PROTOCOL FOR DISCIPLINARY ACTIONS ACCORDING TO STUDENT RIGHTS

4. REMOVAL FROM EMPLOYMENT WITH UNIVERSITY - DR. BRANNUM, DR. DOLAN, DR. WOESTE, DR. LAYNE (PERHAPS OTHERS PENDING FINDINGS OF TRIAL E.G. DR. SCHNYDER, DR. SMITH, DR. DRUMHILLER, DR. RICCARDI).

5. DAMAGES FOR EMOTION DISTRESS, CHARACTER DEFAMATION AND TWO YEARS TIME LOST – PAID AMOUNT $7,000,000

6. DAMAGES IF COMMUNICATION REVEALS ADDITIONAL RECKLESS EFFORTS TO MALICIOUSLY COLLUDE WITH EXTERNAL PARTIES THAT MIGHT INTERFERE WITH ACADEMIC/PROFESSIONAL ASPIRATIONS OF PLAINTIFF, SUGGESTING EXPONENTIAL EFFECTS OF DEFAMATION REDUCED LIFETIME EARNINGS – PAID AMOUNT $10,000,000 PER EXTERNAL ENTITY E.G. A UNIVERSITY, A FAMILY, A COMMERCIAL BUSINESS, A NON-GOVERNMENTAL ORGANIZATION, A GOVERNMENT AGENCY

NOTE – IF COMMUNICATION REACHES OUTSIDE THE UNITED STATES AND/OR INVOLVES ANY FORM OF SURVEILLANCE BY FORMER OR PRESENTLY ACTIVE GOVERNMENT EMPLOYEES, MATTERS RELATED TO THE FISA MAY ARISE

IF EVIDENCE OF CRIMINAL ACTIVITY ON THE PART OF THE DEFENDANTS ARISES, THESE MATTERS WILL BE ADDRESSED THROUGH SEPARATE PROCEEDINGS

---

3/4/2020

*/s/ Joel Wickwire*
Signature

Joel Wickwire
Vancouver, WA
(360) 213-7657

---

**Privacy Rules and Judicial Conference Privacy Policy**

Under the E-Government Act and Judicial Conference policy, any paper filed with the court should not contain an individual's social security number, full birth date, or home address; the full name of person known to be a minor; or a complete financial account number. These rules address the privacy concerns resulting from public access to electronic case files.

Complaint (Rev. 12/2000)

# APPENDIX I

LIST OF MOTIONS

1. MOTION TO HOLD PROCEEDINGS REMOTELY

2. MOTION FOR JOIN ALL PARTIES

3. MOTION TO REQUEST FROM ALL NAMED DEFENDANTS COMMUNICATION RELATED TO OR REFERENCING PLAINTIFF. INCLUDING SCHOOL/WORK EMAILS, PRIVATE EMAILS, AND/OR COMMUNICATION THROUGH SMS/MESSAGING APPLICATIONS. THIS IS ALL WORK-RELATED SUBJECT MATTER, NOT PROTECTED, AND PUBLIC INFORMATION.

4. MOTION TO REQUEST RECORDS OF PREVIOUS EXPULSIONS FROM APU/AMU

5. MOTION TO SUPPRESS INTRODUCTION OF EVIDENCE NOT RELEVANT TO THE REASONS CITED IN THE DOCUMENTATION RECEIVED BY THE PLAINTIFF IN THE PROCESS OF EXPULSION (E.G. PAST LEGAL MATTERS, RELATIONSHIPS WITH INDIVIDUALS FOREIGN OR DOMESTIC, ANY ASPECTS OF PROFESSIONAL OR PRIVATE LIFE, ETC.). IF WAS NOT OFFERED THEN, IT IS IRRELEVANT TO THE PROCEDURAL VIOLATIONS OUTLINED IN THIS PETITION

6. MOTION FOR SUMMARY JUDGEMENT (WITH DELETION OF EXPULSION RECORDS, REMOVAL OF SPECIFIED INDIVIDUALS FROM EMPLOYMENT WITH APUS/AMU AND (RE)IMPLEMENTATION OF RECOMMENDED POLICY ADJUSTMENTS): AWARD AMOUNT: $5,000,000

## SUMMONS

American Public University System/
American Military University
Dr. Katherine Brannum
Dr. Lori Woeste
Dr. John Dolan
Dr. Melissa Schnyder
Dr. Vernon Smith
Dr. Nicole Drumhiller
Dr. Mark Riccardi
Dr. Jennifer Douglas
Dr. Melissa Layne
Dr. Carlson-Rainer

Ms. Caroline Simpson
Ms. Michelle Newman

## WITNESS LIST/AFFIDAVIT REQUESTS

Dr. Terry Wilkin
Heather Daube
Jenny McGuigan
President of University
Jason Anderson
Dr. Matherly
Alfred Lewis
Tony Lewis
Dr. Ludwick
Laura Hunter
Dr. Duryea
Dr. Roman
Orian (Jhay) Edwards
*Financial Aid Office*
    Hannah Cohen,
    Shannon Mendzela

15

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

Joel Daniel Wickwire

Plaintiff,

Civil Action No.:_____

American Public Univieristy et al.

Defendant(s)

Certificate of Service

I, Joel Daniel Wickwire, appearing pro se, hereby certify that I have served the foregoing (title of document being sent) upon the defendant(s) by depositing true copies of the same in the United States mail, postage prepaid, upon the following counsel of record for the defendant(s) on 4/3/2020:

List name and address of counsel for defendant – **Unknown**

*[signature]* 3/4/2020

(sign your name)